UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

DEMETRIO CASTILLO ARZUAGA,

      Petitioner,

v.

Case No. 3:26-cv-179-MMH-LLL

WARDEN, BAKER COUNTY
DETENTION CENTER and
U.S. ATTORNEY GENERAL,

      Respondents.

_____

## ORDER

### I. Status

Petitioner Demetrio Castillo Arzuaga, an immigration detainee at Baker Correctional Institute, initiated this action by filing a pro se Petition for Writ of Habeas Corpus (Doc. 1) pursuant to 28 U.S.C. § 2241 on January 30, 2026. He is proceeding on an Amended Petition (Doc. 3; Amended Petition). The Federal Respondent (United States Attorney General) filed a Response to Amended Petition (Doc. 9; Response). Respondent Warden filed a Motion to Dismiss (Doc. 8; Motion to Dismiss), arguing he is not a proper respondent in this case. Arzuaga filed a Reply (Doc. 11; Reply). This case is ripe for review.

## II. Background

Arzuaga, a citizen of Cuba, entered the United States on May 25, 2016; presented himself for admission; and was paroled into the country. Response at 1; Doc. 9-2 at 3. On November 13, 2024, an immigration judge ordered Arzuaga removed to Cuba. Response at 2; Doc. 9-5 at 1–4. Arzuaga did not pursue an appeal. Response at 2. On December 2, 2024, United States Immigration and Customs Enforcement (ICE) released Arzuaga on an Order of Supervision (OSUP). Id. at 2; Doc. 9-6 at 1. However, ICE detained Arzuaga on July 18, 2025, after he was arrested for a violation of a domestic violence injunction. Response at 2. Arzuaga remains in the custody of ICE. Id. at 2–3.

## III. Analysis

In his Amended Petition, Arzuaga argues that he is entitled to release under Zadvydas v. Davis, 533 U.S. 678 (2001), because his post-removal order detention exceeds six months and there is no significant likelihood of removal in the reasonably foreseeable future.[1] Amended Petition at 1–2. Following an order of removal, immigration detention is governed by 8 U.S.C. § 1231. See Johnson v. Guzman Chavez, 594 U.S. 523, 543–44 (2021) ("And § 1231 explains what to do if the alien is ordered removed."); see also Deshati v. Noem, No. 25-

---

[1] Despite the Federal Respondent's argument to the contrary, the Court is satisfied it has jurisdiction over Arzuaga's Zadvydas claim. 533 U.S. at 688 ("§ 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention.").

2

cv-15940-ESK, 2025 WL 3204227, at *2 (D.N.J. Nov. 17, 2025)[2] ("The statute governing post-final order of removal immigration detention is 8 U.S.C. § 1231."). Pursuant to 8 U.S.C. § 1231(a)(1)(A), "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days." Detention during the removal period is mandatory. 8 U.S.C. § 1231(a)(2).

Nevertheless, in Zadvydas, 533 U.S. at 690, the Supreme Court held that indefinite detention of aliens raises serious constitutional concerns. Once an order of removal is final, ICE should make every effort to remove the alien within a reasonable time. Id. at 701. The government may detain an alien beyond the statutory removal period if he is, among other things, a criminal alien or the Attorney General has determined the alien is a risk to the community or unlikely to comply with the order of removal. 8 U.S.C. § 1231(a)(6). The Supreme Court in Zadvydas held that six months is a presumptively reasonable period to detain a removable alien awaiting deportation. Id. "Although not expressly stated, the Supreme Court appears to

---

[2] The Court notes that although decisions of other district courts are not binding, they may be cited as persuasive authority. See Stone v. First Union Corp., 371 F.3d 1305, 1310 (11th Cir. 2004) (noting that, "[a]lthough a district court would not be bound to follow any other district court's determination, the decision would have significant persuasive effects.").

view the six-month period to include the 90-day removal period plus 90 days thereafter." Akinwale v. Ashcroft, 287 F.3d 1050, 1052 (11th Cir. 2002).

After that six-month period has passed and the alien "'provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future,'" the burden then shifts to the Government to provide evidence sufficient to rebut that showing. Id. at 1052 (quoting Zadvydas, 533 U.S. at 701). Thus, "in order to state a claim under Zadvydas the alien not only must show post-removal order detention in excess of six months but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." Id. If an alien makes these showings, then the burden shifts to the government to rebut the presumption with sufficient evidence establishing that there is a significant likelihood of removal in the reasonably foreseeable future. Zadvydas, 533 U.S. at 701.

Here, there is no dispute that when Arzuaga filed this case, he had been in ICE custody for over six months following his order of removal. See Response at 9 (stating Arzuaga's "detention is beyond the presumptively reasonable six-month period set forth in Zadvydas"). Nevertheless, the Federal Respondent contends that Arzuaga "failed to comply with ICE's attempt to execute his removal order . . . ." Id. at 10. The Federal Respondent requests that the Court

4

"toll[ ]" Arzuaga's period of detention because he "is willfully impeding ICE's removal efforts." Id. In support of its position, the Federal Respondent relies on the Declaration of Deportation Officer Corey L. Horton. See Doc. 9-7. Officer Horton asserts in pertinent part: "On or about September 17, 2025, third country removal to Mexico was attempted at Whiskey gate removal. . . . [Arzuaga] failed to comply with removal. Specifically, [Arzuaga] refused to comply by not crossing the border." Id. at 2.

Section 1231(a)(1)(C) explicitly provides for extension of the removal period "if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal." 8 U.S.C. § 1231(a)(1)(C). When addressing a Zadvydas claim, courts have applied § 1231(a)(1)(C) differently:

> Many courts conduct an analysis using the burden-shifting framework from Zadvydas, considering an alien's failure to cooperate in determining whether the alien can show "good cause" to believe that there is no significant likelihood of removal in the reasonably foreseeable future. Other courts contend that an alien's failure to cooperate precludes an analysis under Zadvydas altogether. Finally, some courts find an alien's failure to cooperate or filing of litigation equitably tolls, possibly indefinitely, the six-month removal period. In fact, a couple of courts covered both bases finding obstruction tolled the removal period, and in the alternative, the alien did not meet the Zadvydas standard.

Glushchenko v. U.S. Dep't of Homeland Sec., 566 F. Supp. 3d 693, 705–06 (W.D. Tex. 2021) (footnotes omitted). The Eleventh Circuit Court of Appeals has recognized that the six-month period may be tolled if the alien "'acts to prevent [his] removal'" by filing litigation "challeng[ing] issues related to his removal order and his post-removal period detention." Akinwale, 287 F.3d at 1052 n.4 (quoting 8 U.S.C. § 1231(a)(1)(C)). More recently, the Eleventh Circuit noted that "if the removal period was extended by operation of § 1231(a)(1)(C), then ICE can continue to detain [the petitioner] because 'the keys to [the petitioner's] freedom [are] in his pocket and [he] could likely effectuate his removal by providing the information requested,' so he 'cannot convincingly argue that there is no significant likelihood of removal.'" Singh v. U.S. Att'y Gen., 945 F.3d 1310, 1314 (11th Cir. 2019) (quoting Pelich v. Immigr. & Naturalization Serv., 329 F.3d 1057, 1060 (9th Cir. 2003)); see Vaz v. Skinner, 634 F. App'x 778, 782 (11th Cir. 2015)[3] ("Because Petitioner is responsible for thwarting his removal, he cannot show that there is no reasonable likelihood that he will not be removed in the reasonably foreseeable future if he cooperates with DHS and voluntarily signs for the travel document.");

---

[3] The Court does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when the Court finds them persuasive on a particular point. See McNamara v. Gov't Emps. Ins. Co., 30 F.4th 1055, 1060–61 (11th Cir. 2022); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

Oladokun v. U.S. Att'y Gen., 479 F. App'x 895, 897 (11th Cir. 2012) ("Oladokun fails to 'provide[ ] good reason to believe that there is no significant likelihood of [his] removal in the reasonably foreseeable future,'" because his "non-cooperation is the only barrier to his removal." (quoting Zadvydas, 533 U.S. at 701).

Here, the Federal Respondent does not show that Arzuaga's actions prevented his removal. The Federal Respondent's position is based entirely on Officer Horton's assertion that Arzuaga refused to cross the border into Mexico. See Doc. 9-7 at 2. However, Officer Horton does not explain the circumstances that occurred at the border. It is unclear whether ICE transported Arzuaga to the border and essentially asked him to voluntarily depart, whether ICE had ever previously communicated with Mexico regarding Arzuaga, or whether ICE even had an approved plan for removal to Mexico that Arzuaga actually thwarted in some way. Further, assuming that Mexico was willing to accept Arzuaga, Officer Horton does not explain why ICE could not or did not thereafter seek travel documents for Arzuaga or otherwise plan for his removal to Mexico via a different way, such as a charter flight. Without more, the Court cannot find that Arzuaga's actions as described in Officer Horton's Declaration prevented his removal. As such, the Court finds Arzuaga's six-month period expired prior to filing this case.

The Court also finds that Arzuaga has provided good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future. Arzuaga has now been detained approximately nine months; he contends that ICE is unable to obtain travel documents from the country listed in his removal order (Cuba); and he asserts that ICE has not identified any agreement with a third country to accept him, requested travel documents, or provided a timeline for potential third-country removal. See Amended Petition at 2. For the same reasons expressed above, the Court declines to find that Arzuaga's "refusal" to be removed to Mexico has prevented his removal. Indeed, detaining a noncitizen and using the specter of continued detention to compel him to "voluntarily" depart does not constitute removal. Instead, it is the exact kind of indefinite detention that Zadvydas sought to prevent. Thus, the burden shifts to the Federal Respondent to "respond with evidence sufficient to rebut [Arzuaga's] showing." Akinwale, 287 F.3d at 1052. As explained below, the Federal Respondent fails to do so.

The Federal Respondent presents no evidence that it has taken steps toward removing Arzuaga to Cuba, despite having nine months to do so. Instead, the Federal Respondent's only effort has been a trip to the United States-Mexico border in an apparent attempt to coerce Arzuaga into

"voluntarily" departing to a country of which he is not a citizen.[4] The Federal Respondent has not provided any evidence to suggest that ICE has actually communicated with Mexico or any other third country regarding Arzuaga. Nor has the Federal Respondent demonstrated that the necessary travel documents have been sought—let alone obtained—for any country. It has now been more than a year since Arzuaga's order of removal became final, yet the Federal Respondent has not articulated a specific plan for his removal. Based on the evidence, or lack thereof, the Court finds the Federal Respondent has failed to show that there is a significant likelihood Arzuaga will be removed in the reasonably foreseeable future. Therefore, Arzuaga is entitled to release from detention under Zadvydas.

## IV. Motion to Dismiss

In the Motion to Dismiss, Respondent Warden asks the Court to "dismiss [him] from this proceeding with prejudice" as an improper respondent. Motion to Dismiss at 12. He argues that ICE is Arzuaga's "'immediate custodian,'" id. at 11, and "the director of ICE's local field office responsible for [Baker Correctional Institute] – not its 'warden' – is the proper respondent," id. at 12.

---

[4] It is unclear to the Court if Arzuaga even received a notice of third-country removal before the trip. The Federal Respondent provides evidence of only one Notice of Removal dated October 27, 2025, well after the trip to the border. See Doc. 9-9 at 1.

There is much confusion and difference of opinions on who the proper respondent is when an immigration detainee files a § 2241 petition. The Court recognizes Respondent Warden's argument that while a warden may technically maintain day-to-day control of a facility, the warden does not have ultimate control over an immigration detainee's custody status, and a warden is ill-equipped to respond to a habeas petition and defend the federal government's interests. Nevertheless, the warden is the "immediate custodian" and presumably the individual who, upon ICE's direction, opens the door to release the detainee. Given the uncertainty and wide-ranging decisions on this particular issue, the Court declines to find that the warden is not a proper respondent. See, e.g., Vasquez v. Reno, 233 F.3d 688, 696 (1st Cir. 2000) ("[W]e hold that an alien who seeks a writ of habeas corpus contesting the legality of his detention by the INS normally must name as the respondent his immediate custodian, that is, the individual having day-to-day control over the facility in which he is being detained."); Pak v. Hoover, No. 3:26-CV-00379, 2026 WL 624165, at *1 n.1 (M.D. Pa. Mar. 5, 2026) (maintaining the warden as the only respondent, but recognizing that "the government will be bound by the [c]ourt's judgment because [the warden] is acting as an agent of the federal government by detaining [the petitioner] on behalf of [ICE]"); Cid-Barrios v. Raycraft, No. 25-13630, 2025 WL 3724377, at *4 (E.D. Mich. Dec. 24, 2025) ("[T]he Acting

10

Director of Enforcement and Removal Operations for the USCIS Detroit Field Office, and not the administrator of the contract detention facility in Lake County, is the proper respondent to be named in a habeas corpus petition filed by a non-citizen challenging his detention under section 2241."); Krechmar v. Parra, No. 2:25-CV-01095-SPC-DNF, 2025 WL 3620802, at *2 (M.D. Fla. Dec. 15, 2025) (recognizing that "[t]he warden of Alligator Alcatraz would be ill-equipped to respond to the merits of [the petitioner's] claims and to be the sole defender of the federal government's interests" (emphasis added)); Beltran v. Raycraft, - - - F. Supp. 3d - - - , 2025 WL 3237429, at *11-12 (W.D. Mich. Nov. 20, 2025) (recognizing that while the Sixth Circuit has concluded that a noncitizen must generally name his immediate custodian, that is ICE's district director for the district in which he is confined, there are exceptions, such as naming the Secretary of DHS to ensure at least one respondent maintains authority over the petitioner's custody in the event he is transferred out of the district; dismissing all respondents other than the Secretary of DHS, including the warden of the facility at which the noncitizen was housed). As such, the Motion to Dismiss is due to be denied.

Accordingly, it is **ORDERED**:

1.      Arzuaga's Amended Petition (Doc. 3) is **GRANTED**. Respondents shall release Arzuaga **within 24 hours** of this Order. At least five (5) hours

11

before releasing Arzuaga, Respondents shall provide Arzuaga with access to a telephone to arrange transportation from the detention facility.

2.     Respondent, Warden of Baker County Detention Center's Motion to Dismiss Petition for Writ of Habeas Corpus (Doc. 8) is **DENIED**.

3.     The **Clerk** is directed to terminate any motions, enter judgment granting the Amended Petition, and close the file.

**DONE AND ORDERED** at Jacksonville, Florida, this 15th day of April, 2026.

**MARCIA MORALES HOWARD**
United States District Judge

Jax-9 4/14
c:     Demetrio Castillo Arzuaga
       Counsel of record

12